## URIAH OAKES *versus* CHARLES HILL.

A number of persons met together and organized themselves as a voluntary religious society. No further meeting was held within six months, when the question was made, whether the society had not been dissolved. The records were afterwards burnt, but it did not appear that this was done by order of the society, nor had there been any corporate act evincing an intention to abandon their corporate powers. Many members filed with the clerk of the First Parish a certificate that they had withdrawn from the voluntary society, but it did not appear that there were no other members. It was *held*, that these facts did not prove that the voluntary society had been dissolved.

Sc, the omission for two years, to meet for parochial purposes and for the choice of officers, was *held* not to have operated as a dissolution of this society. *See note.*

The recording officer of religious and other corporations may make copies of his records, and his certificate will be evidence of the verity of the copy; but it is no part of his duty to certify facts:— wherefore, where the clerk of a religious society certified simply, "that the plaintiff, at his own request, had ceased to be a member of the society," it was *held* that the certificate was not legal evidence of that fact.

THIS was an action on the case against the defendant, for refusing the plaintiff permission to vote at a parish meeting in Malden.

On the trial it appeared, that formerly the town of Malden consisted of one parish, and transacted their parish business in town meeting, the town clerk and other town officers serving as parish officers.

By *St.* 1819, *c.* 128, a Baptist poll parish was created in Malden. Nearly at the same time a voluntary Methodist society was organized in the same town.

The remaining inhabitants in Malden constituted the First Parish, and they organized themselves as a parish, and chose parish officers, in 1824.

In April 1828, a voluntary religious society was duly organized in Malden, which was called "The Congregational

Religious Society for the Support of Orthodox Preaching in Malden."

It was testified by Ephraim Buck, a justice of the peace, that he issued the warrant on which this society was organized ; that at the meeting for organizing it, Nathan Newhall was chosen clerk ; that the society had no subsequent meeting for parochial purposes ; that their records were returned to him, and that he burnt them, about the end of the year 1830 ; which was after the commencement of this action.

On October 20, 1828, a meeting of the First Parish was regularly held for parochial purposes. At that meeting the defendant, who had been legally chosen and qualified as the clerk of the parish, acted as clerk, and in that character presided at the meeting, in the choice of a moderator ; and while he was so presiding, the plaintiff claimed a right, as a member of the First Parish, to vote, and offered his vote for a moderator. But the defendant refused to receive the vote, and for this refusal the present action was brought.

At the time when the plaintiff so offered to vote, he was more than twenty-one years of age, and had been an inhabitant of Malden, paying annual state, county and town taxes on his poll and estate for several years, and he was then in all respects a legal and qualified voter in town affairs in Malden ; and for several years prior to 1828 he had been a regular member of the First Parish. He was the owner of two pews in the meetinghouse of the First Parish, but this is a territorial parish, and no tax has ever been assessed on the pews.

At the time of the organization of the abovementioned Con gregational Religious Society, the plaintiff assisted in its organization and was chosen one of its assessors.

On June 23, 1828, the plaintiff obtained from the clerk of that society, and filed with the clerk of the First Parish, a cer tificate as follows : — " Malden, June 23, 1828. This certifies that Capt. Uriah Oakes is a member of the Congregational Religious Society for the Support of Orthodox Preaching in said town. Attest, Nathan Newhall, clerk of said society."

On July 29, 1828, the plaintiff obtained from the clerk of that society, and filed with the clerk of the First Parish, a

certificate as follows : — " Malden, July 29, 1828. This cer* tifies that Capt. Uriah Oakes, at his own request, has ceased to be a member of the Congregational Religious Society for the Support of Orthodox Preaching in said town. Attest, Nathan Newhall, clerk of said society." Newhall had no authority to give this certificate, unless such authority resulted from his office of clerk. On presenting this certificate, the plaintiff demanded of the defendant a certificate that the plaintiff had joined and become a member of the First Parish ; which the defendant declined giving him.

On August 26, 1828, and before any parish tax had been assessed for that year, the plaintiff and sixty-eight other persons, inhabitants of Malden, (most of whom, at about the same time with Oakes, filed with the clerk of the First Parish similar certificates of Nathan Newhall, that they had joined and also had ceased to be members of the society for the support of orthodox preaching) filed with the assessors of the First Parish a certificate as follows : — " To Ebenezer Nichols, Edward Wade and Charles Hill,· assessors of the First Parish in Malden. We the subscribers hereby certify and give information, that we have united with and become members of said First Parish and are liable to taxation in said parish. Malden, August 26, 1828."

With the consent of the parties the judge ordered the jury to return a verdict for the plaintiff, with liberty to the defendant to move to have it set aside.

The defendant accordingly moved that the verdict might be set aside and a judgment be entered in his favor or a new trial be granted, because the plaintiff having, on June 23, 1828, by his own voluntary proceedings, determined his connexion with the First Parish and legally joined another society, he could not again rejoin the First Parish, except by obtaining their consent and a legal dismission from the new society which he had joined, or by the legal dissolution of the new society, or by his removing into Malden from some other place ; neither of which events had happened.  ·

If in the opinion of the Court the plaintiff had not a right to maintain his action against the defendant, the verdict was to

ue set aside, and a judgment entered for the defendant or a new tiial granted.

*Saltonstall* and *Peabody* for the defendant.

*Hoar* and *C. Lewis* for the plaintiff.

MORTON J. drew up the opinion of the Court.[*] In the former trial of this case it was decided,[†] that a parish had no power to exclude any of the inhabitants of its territory from parochial rights and privileges ; and that every inhabitant of a parish not procuring an exemption by becoming a member of some other religious society, was liable to all the burdens and entitled to all the rights of a member of the parish. Parishes were likened to towns in this respect, and it was holden that the former had no more power to exclude from parochial, than the latter had, from municipal rights.

In pursuance of these principles it was determined, that when the plaintiff dissolved his connexion with the voluntary society of which he had been a member, he *ipso facto* became a member of the parish. A certificate of such dissolution, from the clerk of the voluntary society, was produced at the former trial ; no question was then started as to the effect of it ; and the decision was made upon the assumption that the plaintiff had ceased to be a member of the voluntary association. As this point had not been investigated, it was intentionally left open, in order that if there was any doubt whether the plaintiff had in fact withdrawn from that society, it might be thoroughly examined.

This is the only remaining question in the case. Every other point was fully considered and decided in the former judgment. The action has been again tried ; the facts are before us, and we are now to decide whether they show a disso lution of the plaintiff's connexion with the voluntary society. Having been a member, it is incumbent on him to show that he had ceased to be such before he claimed a right to vote in the old parish.

It was argued that the voluntary society had been dissolved, and so all its members divested of all the rights and immuni-

*Oakes*
*v.*
Hill.

Oct. 20th,
1832.

*April term*
*1823,*
*at Concord.*

---

[*] *Shaw* C. J. did not sit in the cause.    [†] See *Oakes v. Hill,* 10 Pick. 333.

ties derived from their association.   This is the first question to be determined.

It was holden in our former judgment, that religious societies formed under the statute of 1811, *c.* 6, possessed limited corporate powers and were to be treated as, and deemed to be, corporations for certain purposes.

It is said in books of high authority, that a private corporation may be dissolved by statute ; by the death of all its members ; by a surrender of its franchises ; and by a forfeiture of its charter, through negligence or abuse of its franchises. 2 Kent's Comm. 245 ; 1 Bl. Comm. 485.   It is very manifest that this society has not been dissolved in either of these methods.

These corporations are somewhat peculiar as to the mode of their creation and the nature and extent of their powers, duties and liabilities.   And as by the provisions of our statutes, every member has the power of withdrawing at pleasure, it would seem that the society itself, having discharged all its liabilities, might by its own act cause its own dissolution.   A<sup>t</sup> least, this might be done by the unanimous act of the society, for every individual might withdraw and leave none to sustain the corporate powers.

But in the case at bar there was no vote to dissolve the society, nor any corporate act evincing an intention to surrender or abandon their corporate powers.   If the *sixty-nine* who filed their certificate with the assessors, had actually withdrawn from the society, yet it does not appear, nor is it to be presumed, that there were no other members.   The society might well continue after their secession.

The burning of the records of the society does not prove its dissolution.   The existence of a corporation does not depend on the preservation of its records.   The act of an individual member or an officer of a corporation, cannot destroy the corporation itself.   Besides, the records were not destroyed till after the plaintiff had claimed the right to vote and commenced this action.

The omission of the members to hold meetings, had it been for a much longer time, would not have shown the extinction of the society.   From the last meeting up to the time when it

is contended that it had ceased to exist, was a period of only six months.*

Upon the whole, we think it very clear that the report furnishes no evidence of the dissolution of the society.

Had the plaintiff then withdrawn from the society by his own act, or been dismissed from it in any legal manner?

A member of a parish or other religious society, may withdraw without the consent of the corporation of which he was a member. But this can only be done in the manner prescribed by our statutes upon the subject. The only method pointed out is by becoming a member of another religious society, and filing a certificate of the fact, either with the clerk of the town, by St. 1811, c. 6, § 2, or with the "clerk of the society left," by the St. 1823, c. 106, § 2. The plaintiff had not resorted to either of these modes to dissolve his connexion with the voluntary society.

Had he been dismissed from the society by any act of theirs?

Corporations of this kind have the power to regulate the admission, the expulsion and the dismission of members. When they are created by a direct act of the legislature, they sometimes have it by express grant. But if this be not the case, they have it as incidental to the corporate powers granted. This power may be exercised by the whole society, or by any of its officers to whom it may be delegated. It is a proper subject to be regulated by the by-laws of the society.

No officers of the society, by virtue of their offices, have this power. If they have it at all, it must be by the express delegation of the society itself. There is no evidence, nor

---

* In the case of *Lynde* v. *Hill,* argued and determined at October term 1833, the plaintiff claimed damages of the defendant for refusing him permission to vote for a moderator at the several meetings of the First Parish in Malden on October 20, 1828, March 23, 1829, and March 22, 1830. The facts generally were the same as in *Oakes* v. *Hill.* It appeared that the society for the support of orthodox preaching had never met for the transaction of parochial business, after the meeting on April 18, 1828, at which the society was organized; and the counsel for the plaintiff stated, that the society had had no minister and had held no meeting for public worship. The *Court* decided, that assuming this suggestion of the counsel to be true, the omission for two years, to hold a meeting for parochial purposes and to choose officers, did not operate as a dissolution of the society.

Oakes
v.
Hill.

have we any reason to believe, that it was ever granted, either by the by-laws, or by any other corporate act of this society. The clerk of the society clearly had no power of dismissing members. And there is no evidence that the society ever gave a dismission to the plaintiff. If they did it at all, it must have been by a vote. The proper evidence of such vote would be, a certified copy of the records. No such copy is produced. The paper attested by the clerk does not purport to be a copy of any record, but a certificate of a fact. Clerks of religious and other corporations, and other recording officers, may make and verify copies of their records, and in doing so, act under the obligation of their oath of office. Of the verity of such copies their certificates are evidence. But it is no part of their duty to certify facts, nor can their certificates he received as evidence of such facts.

If the clerk undertook to give the plaintiff a dismission, it was an unauthorized act on his part and can have no effect.

Upon a view of all the facts reported, we are very clearly of opinion, that the plaintiff had not ceased to be a member of the voluntary society at the time when he claimed a right to vote in the old parish ; that the clerk of the parish did right, in refusing to give him a certificate that he had become a member of the parish, and also, when presiding in parish meeting, n rejecting his vote.

The verdict must be set aside and a new trial granted.